Erbe Elektromedizin v. Erbe Elektromedizin 05-1568, Mr. DeWitt. Good afternoon, Your Honors. Timothy DeWitt, on behalf of Appellants, Dr. Jerome Canady, and Erbe Electrosurgical Corporation. Appellants would like to reserve five minutes of time for rebuttal. We have a number of issues that we've covered in our briefing. Where I'd like to start today is on claim construction. Because in this case, in addition to the evidentiary issues and other issues in our briefing, claim construction plays a central role. And the reason is that the claim includes this language at the very end of Claim 1, a handle for maneuvering a tube with an endoscope. Of course, you already had a judgment on claim construction a while ago. And this went back to look at so-called new evidence. The court said that didn't relate to the claim construction. So aren't you asking for a rehearing of something already decided, law of the case? No, Your Honor. That's not correct. In the prior decision in 1998, the district court granted summary judgment without infringement. And that was appealed to this court. It was affirmed without opinion. In the district court's decision in which they vacated the prior summary judgment, the district judge gave an explanation of why he granted summary judgment initially. And the reason was that Erbe had contended that when their product was used, there was a handle and there was four feet of tubing. And since there was four feet of flexible tubing between the handle and the endoscope, it was physically impossible to use the handle to maneuver the tubing. And so the district court found that that didn't make any sense because the evidence we produced showed that indeed there wasn't four feet of tubing between the handle and the endoscope. And now when we're here before you, Erbe now admits that it's less than 20 inches. And in fact, the evidence that the district court excluded showed that it was about the width of a person's hand. Wait. Let me see if I understand. So you're saying you have a right to a do-over on claim construction and infringement because the newly discovered evidence that you came forward with that served as the basis for the judge taking it back related and was part and parcel of those claim construction opinions? No. No, that's not correct. Then on what grounds when the district judge reopens the case based on newly discovered evidence when the claim construction and infringement opinion has already been affirmed, do you think you get to re-argue claim construction issues? I don't think we get to re-argue any of the claim construction issues that were issued there. The issue now is a different claim construction issue in that the contention was that maneuvering. Now the district court has indicated maneuvering means push. Well, we're construing a claim in a patent. It's the same patent. That's correct. Well, let me maybe in this regard, you're referring to you say you can't challenge the original claim construction, but you say there's a new claim construction, correct? That's correct. One thing I've mentioned, where are the two claim constructions in the record? In other words, where is the original claim construction that you say cannot be challenged or you acknowledge cannot be challenged, and then where is what you assert is the new claim construction that can be challenged? The district judge described his claim construction in his Order Granting Relenting Judgment. It appears in the appendix, I believe, at A135 and A136. Okay, hold on. Let's see. This is now, let's see, 135. Because I found something at, let's see, one, maybe it's the same thing. Well, let me, I found a section at A2165. Okay. Under the heading of claim construction. And I assume, given the date of that document, that that's the original claim construction that you say you can't, you acknowledge you can't challenge. That's correct. Right? Okay. Yes, that's correct. So we have, so that's the one at 2165 through 66. And then, now where is the one that you say was recent or newly minted, if you will? A135, 136 is part of Judge Urbina's order in which he was granting the plaintiff's motion for relief from judgment. And in there he gives a discussion of why he granted summary judgment in the first part. And as a part of that, he discusses some of how he construed the claims. And some of this is things that did not appear in the first opinion. And I think that in that first decision, he felt that if there was four feet of tubing between, under any party's interpretation of maneuvering, there was no infringement. And the new evidence proved that was wrong. So it raised new issues that the judge hadn't considered. There was no market hearing in this case. So the only issues . . . Now, where specifically here, and I'm just, the reason I'm sort of harping on this, if you will, is that I want to make sure, because in light of your contention, I think it's important that at least I understand where you say the differences are specifically. So you point to 135, 136. I apologize. I cited the wrong page. 133 to 134, he talks about the court's interpretation of maneuver 1. I'm sorry. 133 to 134? Section C, the court's interpretation of Claim 1 of the 675 patent. Yep. Okay. He discusses how he had interpreted the claims. And in that section, we don't question what he has in that section. We're not challenging that. Okay. What we're challenging is that . . . So you're saying in this section, he accurately recites what he did before at what we pointed to earlier. That's correct. Now, where does he change it? This decision was not appealed. He changes it in his newer decision that directly resulted in this, where he re-granted summary judgment to Irving. Now, is that . . . would that be at page 48 of the attachment to your brief? Yes, that would be in the beginning of the section there. The court grants defendants renewed motion for summary judgment. Now, where, though, does he, in your view, change the claim construction? I'm not saying you're wrong. I'm just saying where is it precisely that he does it, the line and sentence? In his opinion, he never expressly says, this is how I'm interpreting the claim, this is how I'm not interpreting it. But when we get to A52, he gets into, and he goes on from there, he gets into why is he granting summary judgment now. He's granting summary judgment now because he is finding merit to two arguments made by the defense. And at the beginning, in the middle of page A52, he indicates the defendants claim that the plug, quote, is not and cannot be used to maneuver the tube within the endoscope during a tissue coagulation procedure. And then he continues on. Because of the tube's length and flexible nature, the defendants argue that the plug cannot be used to push the tube within the endoscope. And he continues on and he cites to the declarant run for the evidence supporting that position that it cannot be used to push the tube. So in your view, this necessarily assumes a claim construction to the effect that what? That's exactly right. We call it as implied claim construction that the handle must be able to be used to push the tube. In arguing this simply that there is no requirement that the handle be capable of being used to push the tube the handle must be used to maneuver the tube. And even Herve submits a claim construction in their appeal briefs that is different to that where Herve now says it means that maneuvering means placing the tip in position for coagulation. There's nothing in this that says anything about pushing. Whether the handle can be used to push the tube is completely irrelevant. But I'm sorry. But tell me again where the district court concludes that the handle needs to be what you just said? Well, he adopts this argument of the defendants beginning at 852. And he continues on and he talks about it in a number of different places. Well, in 52 he's restating what the defendants are arguing. Well, the plaintiffs argued earlier that the handle should be interpreted broadly to include any handle element positioned outside an endoscope. The court rejected this contention years ago. We don't contest that. We don't think that's what we had argued, but that was how he interpreted our argument. And we don't contest his finding on that. It clearly does not cover any handle. It covers a handle that can perform the recited function. The function is for maneuvering the tube within the endoscope. The question is what does foremaneuvering mean? And there's nowhere in any of his opinions other than in this section beginning at 852 where he talks about pushing the tube. There's nowhere where he says can pulling. Pulling cannot be maneuvering the tube. There's nowhere where he says that pulling can be maneuvering the tube. We believe that there was a lot of evidence submitted that showed that the handle certainly could be used to pull the tube, and even under Herve's position, pull the tube to place it in position to coagulate tissue. The second part is when must the handle be used to maneuver the tube. The court is citing to the defendant's arguments that it has to be during. The plug is never used during a coagulation procedure, and that's what the declarant says. Every time the declarant says it can't be used to maneuver, he says during a tissue coagulation procedure. That's nowhere in the patent. It's nowhere in the claims. And in fact, under Herve's new definition, placing the tip in position for coagulation, that would be before a tissue coagulation procedure. So even Herve now is contending that it's irrelevant whether it's during a tissue coagulation procedure. The issue is can the handle be used for that function for maneuvering the tube. You wanted to save time for rebuttal. You can use what you have or save it. I'll use one more minute. I'll try to be very quick. There's one issue other than claim construction that I did want to hit and had to do with the evidentiary issues. Here, the appellant believes that different standards were applied to the appellant and to Herve. And the reason is that Herve was permitted to submit this declaration, and the judge relied on it from Grund, supposedly explaining this newly discovered evidence. And we submitted evidence explaining that as well. These were abuse of discretion issues, of course. Yes, they are, absolutely. And those are ones where you submitted the evidence and you don't believe that there was a justifiable basis for excluding the evidence in a summary judgment procedure. I'll reserve the remaining time for rebuttal. Thank you. Thank you. Mr. Weiner. Weiner, not Weiner, isn't it? Weiner. Weiner, sorry. Good afternoon, Your Honors. Do you have argon here, too? Excuse me? Do you have argon gas? No, Your Honor, I didn't bring any argon gas. I did bring a sample Herve probe, which is identical to the probe that's included in the joint appendix. Well, we'll probe your argument, too. Okay. Thank you, Your Honor. Fair enough. The district court acted reasonably and did not abuse its discretion in limiting the scope of briefing to the new evidence on which the court relied and granted relief from the judgment in reopening the case. Did the court come up with a new claim construction? No, there is no new claim construction. That's absolutely incorrect. Page A52 in the record is the correct page in the record on which the court addressed claim construction. The court referred to the earlier decision in 1998 in which the court construed the claim limitation handle for maneuvering the tube within an endoscope to require that the handle satisfies the functional language for maneuvering the tube within an endoscope. In the earlier decision, the court did not elaborate a more detailed construction of that. That was all that was necessary in order for the court to decide the issues that were before the court at the time, and the court decided in the earlier case in 1998 to grant summary judgment of non-infringement. Mr. Weiner, let me ask you again. Why precisely, in your words, is... I mean, you heard Mr. DeWitt's argument. He contends that what we see at page A52 represents a departure from what we see at A2165 through 2166. I think we're agreed those are the operative pages or parts of the record. Why do you say, again, there's no departure from 2165-66 to A52? Well, the court starts out at A52 and states that the court has already interpreted the handle to include a limiting function of maneuvering the tube within an endoscope, and the plaintiffs claim that the maneuvering capability is demonstrated through the newly discovered evidence. So the court had the issue right in front of... the correct issue right in front of the court. The court was looking at the limitation handle for maneuvering the tube, and the court said that it already construed the limitation. It says the plaintiffs argued earlier that the handle should be construed to include any handle element regardless of the functional language. The court rejected this contention years ago. The court then goes on to analyzing infringement. There's nothing else further on claim construction. So you're saying this is consistent with what we have at 2166 where there are a number of references to maneuvering the tube within the endoscope. That's correct, because in the earlier decision on summary judgment, in the earlier appeal, Kennedy argued that the functional language did not need to be given any weight. He argued that any handle could satisfy that claim limitation. And in evaluating whether the new evidence that was the basis for reopening the case, the court had no need to reconstitute the claims. The court had already construed the claims. And the court applied the earlier claim construction to the additional, to the new evidence that was the basis for reopening the case, and the court correctly decided that there was still no genuine issue or material fact. Mr. Weiner, what about the sanction? Was that soundly based on the law, PTO practice, only when an administrative agency action is ripe is it final? Can you move to lift the stay? Could you tell us what you think about that? Well, in the decision denying Kennedy's motion to lift the stay, the district court correctly denied the motion, and the court exercises discretion to sanction Kennedy. Of course, we're not reviewing the correctness of the sanction, I think the correctness of the court's view of the matter, but sanction's a serious action. Why was it justified? The sanction was justified because Kennedy disregarded the local rule requiring a party to meet and confer with the opposing party in filing a non-dispositive motion. So meet and confer was the heart of the justification. That's correct. And Kennedy failed to satisfy the meet and confer requirement. Irving was surprised to receive this motion when it was served on Irving because we did not have any, there was no meet and confer. Kennedy did not indicate to us that they were intending to file a motion to lift the stay. So we brought that failure to follow the local rules to the district court's attention. The district court denied the motion to lift the stay, and the district court also sanctioned Kennedy. And as pointed out in the red brief, Kennedy had an opportunity to respond in the reply brief in support of the motion. Kennedy had an opportunity to disagree if Kennedy took the position that Kennedy did satisfy the local rule. Kennedy could have explained the failure to satisfy the local rule. Kennedy could have asked to meet and confer at a later time due to an error. But Kennedy did not dispute the fact that Kennedy didn't follow the local rule. Kennedy did not. That issue is dealt with in a footnote, isn't it? That's correct. Is a footnote a proper place to provide justification for sanction? I don't think it was an abuse of discretion for the court to do that. I think there might have been other ways that it could have been dealt with, but I think Kennedy had clear notice of the reasoning for why he was being sanctioned. The footnote was long and detailed, and I don't think there was anything improper about putting that information in the footnote in the opinion. Kennedy, as pointed out in the brief, Kennedy had not only the opportunity in the reply brief to respond to the failure to follow local rules, but Kennedy filed two additional papers in support of the motion to lift the stay. And in both of those papers, Kennedy did not address that issue. And I think the court did not appreciate Kennedy disregarding the local rules, and the court wanted to send a clear message that that was not acceptable conduct before that court. With respect to the items of new evidence that are before the court, as pointed out in the red brief, there are just four specific items of evidence. And following Kennedy's arguments in the blue brief, it's a little difficult to tell which evidence is properly before the district court and which evidence was additional evidence. There really were just four items of evidence. In particular, the Rule 60 motion was granted because Irby did not produce during discovery the file history of the Irby patent covering the accused vice. And in particular, there were just four items of evidence from the file history. There was the specification itself of the Forine patent, and there were three articles that were authored by the inventors of the Forine patent. With respect to the Forine patent, Kennedy only relies on a single sentence in the patent, and that sentence happens to be identical to the sentence that was in the produced patent application, but the court treated that as evidence in support of the decision to grant relief from the judgment. The sentence states that the surgeon can grip the proximal end region of the tube in order to move the tube in the direction into or out of the endoscope. There's nothing in that sentence that refers to using the plug at the end of the tube for maneuvering the tube. Instead, that sentence is completely consistent with Irby's argument, with the argument that we presented before this court in 1999, and it consistently maintained this plug is not used to maneuver the tube. The surgeon can grasp the sides of the tube to insert the tube in the endoscope. That's exactly what the Forine patent refers to. And with respect to the evidentiary issues, there was really no need for a declaration from Dr. Bryn to explain what that sentence means. That's clear just from a reading of the English words on the page. If you look at the entire Forine patent, there's no reference in the entire patent to using the plug to maneuver the tube. That's nowhere to be found. Likewise, with the Forine and Grund articles, with respect to two of the articles, the district court correctly determined that Kennedy waived any arguments by not making any arguments with respect to two of the articles, which leaves just one other item of evidence. That's the Grund 1994 article. That's a short article that's found in the supplemental joint appendix. And the Grund article, again, Kennedy relies on one sentence. The sentence states, as with the laser, APC, or argon plasma coagulation, is applied mostly in a backward direction during withdrawal of the unit. And then the next sentence states, anterior application during advancement of the endoscope is certainly possible. There is nothing in that sentence or in the entire article that refers to using the plug on this device for maneuvering the tube within the endoscope. And there certainly is no reference to any handle for maneuvering the tube within the endoscope in that article. I wanted to respond to a couple of points made by Mr. DeWitt. First of all, he states that the court's initial decision to grant summary judgment in 1998 was based on a finding that four feet of tubing exists between the plug, or so-called handle, and the entrance to the endoscope. There is absolutely no support for that in the record, and that is simply not the basis for the court's decision. And addressing the other issue, getting back to claim construction, the court did not construe the claim to add a limitation of during a tissue coagulation procedure. That phrase did occur at certain points in the opinion, but that phrase is just an acknowledgment of the proper context of the claimed invention. The claim recites a surgical tissue coagulator. The claim recites during endoscopic surgery. That phrase, during a tissue coagulation procedure, merely puts the claim construction in the proper context. Mr. DeWitt seeks to have you construe this claim by taking a dictionary definition taken out of context of maneuvering meaning to move into or out of a position or condition. That is incorrect. It's overly broad. It simply takes a dictionary definition and fails to consider the context of the claimed invention as shown by the claim itself specification confirmed by the prosecution history. This is a surgical tissue coagulation device. It should be considered in its proper context. It must be maneuvered in a very precise manner to place the tip of the probe within one centimeter of the tissue without contacting the tissue. In order to do that, you need a very precise maneuvering procedure that's required just moving, being able to move it into or out of a position or condition. It's just vague and overly broad and ignores the context of the claimed invention. If there are no questions, I'll wait for the remaining time. No one ever gets penalized for surrendering time. Mr. DeWitt has a little time left. You appreciate I did you a favor by inquiring about sanctions, which gives you an opportunity to rebut if you wish. I do appreciate that, and I would like to address that very briefly. In this situation, the proper procedure for Irby to have raised this meeting for a confer clause would have been to send a letter to plaintiff's counsel. It would have been for them to prepare a draft motion for sanctions and send it to plaintiff's counsel and give plaintiff an opportunity. But the question is whether the trial court abused its discretion, not what other procedures might have been employed. Our position is it was abuse of discretion, and the reason was it was raised by Irby in a footnote in their opposition. And then, as the court noted, it was raised in a footnote in the judge's opinion. It's not true that the plaintiff had all kinds of opportunity to respond to it. If you look at local rule 7.1, if you look at the cases interpreting it, there is no other case where they imposed sanctions for that. If you look at the terminology that the judge used and how he described it, it was very clear that rule 7.1 on its own was not a basis for him to grant sanctions. He was granting sanctions because he had the impression that our motion to lift the state was unripe, and he didn't have any ability to open the case up again while the re-examination was pending. And his later orders reflect that, where he repeatedly asked the parties, can the parties give me some indication on whether or not I have jurisdiction to consider this again now, and have all appeals been run on the re-examination? I think district courts just didn't understand the re-examination procedure. Of course, the court had had this for, what, this goes back to 1996. That's correct. And he vacated the judgment to go back and look at so-called new evidence and found that it didn't matter. So if the court was a little short-tempered, perhaps, is that understandable? I would say no. And the reason I would say that is that in our motion to lift the state, our issue was that the judge had granted relief from judgment, and the judge expressly indicated in his opinion, granting relief, that he would consider a renewed motion for summary judgment at that time. And yet, Irby did not do that. They didn't ask for it. They didn't file it. Instead, they sought to get away from the district court by going to the re-examination procedure. They asked the district court to stay the case, and the case was stayed for three years. And the reason why that re-examination took so long is that a year after the first re-examination was filed and an office action had issued, they filed a second request for re-examination and a third request for re-examination. Neither of which were based on any prior art at all. It was based on articles that were published after the filing date of the plaintiff's patent. So we felt it was entirely appropriate for us to ask the judge to lift the state on the basis that Irby was filing these extra requests for re-examination to further delay the case. So we felt in that instance we were being punished for Irby's delay and all we were trying to do was raise the issue with the court. One thing I would like to mention very quickly in the final section is that Mr. Weiner said something very interesting about the original claim construction of the court at age 2165 to 66. He said that the court didn't need to go into more detail at that time on the evidence before him. That's exactly the position that we're taking. The appellant is not saying the court needs to undo something that was done before. We're just saying there should have been additional clarification on the claim construction that was already given. Thank you, Your Honor. Thank you, Mr. DeWitt. The case will be taken under advisement.